Good morning, may it please the Court. Martin Buchanan, appearing for Lt. Rich Forsyth, Lt. Steve Holliday, and Lt. Kevin Shea. I'd like to begin with what may seem like a really obvious point, but it's an important one. The issue before the Court today is not, of course, the ultimate issue of whether, in fact, the Chief retaliated against these three lieutenants for asserting their rights and filing their lawsuit under the FLSA. This being a summary judgment motion, the issue instead is reviewing the record in the light most favorable to the plaintiffs. Is there sufficient circumstantial evidence of retaliatory motive to support the plaintiffs' claims? And because, of course, it's difficult to prove a retaliatory motive with direct evidence and it's difficult to ascertain motives, the courts have made clear that it's a relatively low burden to demonstrate a triable issue of fact on these issues. In our briefing, we've laid out seven categories of evidence that demonstrate a triable issue of fact on retaliation. I'd like to begin with two related points, the temporal proximity between the protected activity and the adverse employment action and the deviation from the employer's standard employment procedures. So we have here an FLSA action that was filed in July 2012. It took a year for that action to be resolved, so it's pending for an entire year. There's no dispute that during that period of time, the plaintiffs are engaged in protected activity by asserting that FLSA claim. Now, during that one-year time period is, of course, when the first promotion to captain occurs, and the chief acknowledges he knows the only three applicants for that promotion who are internal applicants are these three lieutenants who happen to be involved in the FLSA action at that very time period. And the chief, for the very first time in the department's entire history, decides he is going to open up that promotional opportunity to external applicants. The chief acknowledges that in his 35 years of employment with the police department, this has never occurred before. This is the first time the department has ever gone to external applicants. Interestingly, the city's own brief acknowledges how important the normal policy is of promoting from within. The city, at page 15 of its brief, quotes the chief's own declaration, saying that the policy of promoting from within is, quote, vital for both the morale and growth of the department and also allowed for promotional opportunities to open up at the lower level. So not only is this a longstanding employment practice, but it's vital to the police department. The chief acknowledges in his deposition testimony that the reason he made this change is because he had no intention of promoting any of these three lieutenants. So he's making up this charade so that he can hire someone other than the three internal applicants. So here we have the temporal proximity. All of this is occurring while the plaintiffs are engaged in protected activity, and we have this deviation from normal employment practices. Now, this court in several cases has held that such a deviation from normal employment practices can raise a triable issue of fact on retaliation and pretext. We've cited those in our briefs. The Earl v. Nielsen media research case is one. There, the employer deviated from normal employment practices by terminating an employee without first giving a performance improvement plan. Also, the Berzine case is perhaps closer to this one. The employer there deviated from normal employment practices by opening up the promotional processes to non-journeymen, similar to this case, opening up the promotional process to external applicants. So those are two factors we have, temporal proximity and deviation from normal employment practices. I think those two, honestly, are enough right there, but there's more. The more is that the reasons that the chief gives in his declaration for why he did not promote any of these three lieutenants are, in fact, contradicted by other evidence in the record. Now, as to all three, he gives many, many similar reasons. They're not team players, they're not loyal, they're not supportive of the organization. So for Lieutenant Holliday, the chief says in his declaration, quote, I do not believe that Holliday is a team player. Well, if you look at the one and only performance evaluation that the chief himself has ever done of Lieutenant Holliday, which was back in 2010 when the chief was a captain supervising Holliday, guess what? He lists as one of Lieutenant Holliday's strengths, team player. If you look at that same performance evaluation under interpersonal skills, one part of which is cooperative and participates as a team player, the chief says Lieutenant Holliday exceeds expectations. So, again, his declaration is directly contradicted by the one and only performance evaluation he ever did of this gentleman. Other performance evaluations for Lieutenant Holliday say things like he's the most loyal lieutenant we have, not just to the profession, but to the chief and me. He's repeatedly rated as being a strong team player. He's referred to as having unmatched loyalty in the department. Same with Lieutenant Forsythe and Lieutenant Shea. The chief says about Lieutenant Forsythe, I do not believe he was a team player. Well, if you look on the 2008 evaluation that, again, the chief did of Lieutenant Forsythe, he lists teamwork as one of Lieutenant Forsythe's strengths. So do other evaluations by other supervisors, also saying he's supportive of the organization. Same with Lieutenant Shea. The chief in his declaration says Shea was not a team player or supportive of the office of the chief of police. You look at his evaluations. Lo and behold, he's repeatedly commended for being supportive of the organization. Other explanations that the chief gives in his declaration are also contradicted. For example, the chief says about Lieutenant Shea that he lacked attention to detail. Well, guess what? His performance evaluation for 2010 says Lieutenant Shea is a stickler for details. This is an area that he exceeds at. His attention to detail is probably his strength, in my opinion. 2011 performance evaluation, he looks at every detail. The chief's declaration also says that Lieutenant Forsythe had a negative attitude and created strife in the management team. Well, let's look at the performance evaluations. Can I ask you something about Forsythe? So for 2013, where he failed the exam, could he have been promoted in 2013, or would the failing of the exam precluded a promotion of him? Let me take a step back and I will directly answer your question. But for the retaliation, because we contend the retaliation was when the chief opened up this process to external applicants. And when you look before the rating process that Lieutenant Forsythe failed, these three lieutenants had already filed a grievance and said, hey, listen, this is retaliatory. And that grievance was denied. This being opening up the process to outside applicants. Yes, correct, right. And in fact, of course, the chief admits he had no intention of promoting any of these three people. That was apparent to everyone at the time. And whereas the other two kind of went along with the program and did their best in the rating examination, Lieutenant Forsythe took a different approach and he protested and he said this whole process is rigged, it's unfair, and of course the raters say he has a negative attitude, he keeps talking about the external applicants. So if there had been no retaliation, none of that would have happened. But he didn't bring a claim in court for opening up the process to outside applicants in and of itself, right? That wouldn't have been an adverse employment action, would it, in itself? I mean, it seems like he kind of shot himself in the foot with respect to that one part of the claim. Now, that doesn't mean he couldn't have a 2014 claim, but I'm not sure how he can salvage his 2013 claim. I think because the retaliatory plan was already in effect when he, quote-unquote, failed the raters' examination, because he was responding to the retaliatory plan, my position is yes, he could have a claim in 2013. If the court disagrees, then obviously he does have a claim in 2014. Going back to Lieutenant Forsythe's evaluations, again, the chief says in his declaration one of the reasons he didn't promote Lieutenant Forsythe was negative attitude created strife in the management team. Well, his 2012 performance evaluation says, Lieutenant Forsythe has been great to work with and has been positive in meetings. When a decision was made, he fully supported all aspects of it in a positive manner. Going to 2013, it says, he's been nothing but accommodating and helpful to make the new captain feel at ease in his position. This doesn't sound like someone who's creating strife in the management team. Let me change the subject just briefly. What relief do your clients seek? Not from us in the ultimate lawsuit. Suppose the lawsuit's reinstated, what relief do they seek? Well, certainly monetary relief for being denied the promotions. I can't recall whether there was some form of injunctive relief also that's asserted in the complaint to elevate them to captain. I do have it here. I'm trying to figure. I mean, this is a confounding case in the sense of I'm not sure what the police department is going to look like. I mean, I can't imagine it's a real happy place now, and I can't imagine it's going to get any happier if the lawsuit proceeds and gets resolved. That doesn't mean the lawsuit doesn't have merit, but it's kind of confounding to figure out how the dust settles at the end of the day, how that's going to be good for anybody. Well, I don't know. I mean, as you say, it's not a very happy place right now. All three of these gentlemen are still working at the police department as lieutenants, and to the extent monetary relief can compensate them for the harm, then I guess they get monetary relief. But the damage has already been done due to the retaliatory actions of the chief, and these people are all having to work together, whether they're working together as captains or lieutenants. They're still all part of the same management team. It is unfortunate, I agree, and it's not a happy place. I think that's quite clear from the record, and it's not going to be a happy place no matter what happens with this lawsuit. Have you sought monetary relief? In the complaint, yes. I do want to point out also that a lot of these – Are they all – you're representing all of them, all of the people who weren't promoted? I mean, their claims are a little bit in conflict with each other, right? They couldn't have all been promoted, so how is this monetary relief going to work? Well, that's something – I mean, I represent all three on appeal, and they are represented by the same trial counsel in the lower court. So, Your Honor, you raise an interesting point. There were two promotions, and there are three plaintiffs. So that may have to be decided on remand if the court reverses the judgment here, and that may be an issue, but it hasn't been briefed. I'm not really prepared to answer it. I'm not sure whether they're all disqualified and only two of the three could succeed. I don't know. I also want to point out that many of these reasons that the chief gives, which, again, are almost identical for all three plaintiffs – I mean, coincidentally, all three plaintiffs are not team players. All three plaintiffs are not supportive of the organization. All three plaintiffs supposedly lack loyalty to the organization. Well, these types of amorphous explanations are, in some ways, perfectly consistent with a retaliatory motive. I mean, yes, they were disloyal in the sense they filed a lawsuit against their employer. That is a form of disloyalty. It just happens to be a legally protected form of disloyalty. So even to say, oh, they're disloyal and that's why I didn't promote them, is not necessarily a separate and distinct reason for retaliation, particularly when you go back and you look at all their performance evaluations, and up until the point when they filed this lawsuit, they were viewed as being loyal and team players and supportive of the organization. So I think many of these explanations that, again, coincidentally are the same for all three, they themselves smack of retaliation. Do you want to save the remainder of your time for rebuttal? Yes, I'll do that. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Mark Meyerhoff on behalf of the appellees. The issue in this case, as stated, is whether there's a tribal issue of fact as to whether these plaintiffs or these appellants were not promoted due to the filing of their FLSA lawsuit. Now, you heard some bit pieces of the evaluations and heard an argument that the Chief of Police was not consistent in determining that these appellants were not loyal, were not trustworthy, and demonstrated severe performance problems. But if you look at the evaluations, I know the Court has, there is no question that the evaluations themselves clearly and unambiguously set forth significant issues that the Chief of Police had while he was a captain with these lieutenants. You heard some of it. But how could we be confident that the issue doesn't arise from exactly the claim? Because the tone of the evaluations seemed to change and the temporal link is hard to disregard, that it was after they filed the previous lawsuit that the evaluations turned negative. Well, with all due respect, the record disputes that. The record shows clearly that. There were negative comments before, but there were also a lot of positive comments and there were negative comments offered for the officers that were promoted. So the existence of a prior negative comment is not in itself enough to demonstrate, as a matter of law, because this is a summary judgment, that there wasn't some element of retaliation there. But, Your Honor, in this case, the strength and just the sheer weight of the negative comments in the pre-FLSA lawsuit evaluations shows that the Chief had a well-formed and preconceived idea about the performance of these lieutenants well before they filed an FLSA lawsuit. And it is significant in its criticism. I can just cite from some of the evaluations, and Forsyth was mentioned, when the Chief of Police, when he was a captain, supervised Lieutenant Forsyth in 2007 and 2008, he said that Lieutenant Forsyth disregards department issues unless they impact him, does not want to get involved because it causes extra work, is reactionary, is excitable, is not what I want in a lieutenant. In 2008 and 2009, also predating the FLSA lawsuit, obviously, Lieutenant Forsyth is reluctant to confront issues, does not want extra work. He's a status quo type of manager. He does the minimum, no drive, no initiative. The 2009, 2010. We read these, so we know there are negative comments, but there are also positive comments, and some of the reasons that were given as an explanation are exactly as your opponent read in the evaluations as positive comments. So why doesn't that create a fact dispute? Because any evaluation is going to contain some positive comments. They're doing the job of lieutenant. What the Chief of Police is looking at when he's confronted with promoting somebody to captain in 2013 and 2014 is basically making a decision, do I trust any of these lieutenants to serve as my second-in-command? It's a different position, obviously, a higher rank. This person fills in for the Chief of Police. But what if he doesn't trust them because they filed a lawsuit against him? But there's no evidence of that whatsoever. All we have is a temporal proximity, the fact that these promotions opened up during the time that the FLSA lawsuit was filed. But other than that temporal proximity, which can be a factor, but the cases that have been cited say it may be a factor, but that temporal proximity alone, and that's all there is, is temporal proximity. And by the way, it's temporal proximity by just happenstance that there were retirements and these captain positions opened up, so we have these promotions at the same time. That cannot withstand the sheer weight of the evidence which demonstrates and which a trial court recognized that this Chief of Police had a preconceived, well-developed sense of these lieutenants well before the FLSA lawsuit was filed. It is hard to imagine, frankly, evaluations which more unambiguously and clearly set forth before the protected activity was ever filed the concerns that the decision-maker had with these particular employees. Yes, they do contain some positive comments, as any evaluation would, but the sheer weight of the negative comments, especially when viewed through the prism of what position are these lieutenants trying to be promoted to, this captain position, that is what destroys the temporal proximity alone being enough to carry the day. And as this court acknowledged in the Cochran case, which we cited, especially when you're dealing with a police department where close working relationships are not only necessary but essential to that type of department, the Chief of Police has broad discretion. Obviously cannot make promotion decisions based upon unlawful reasons, but has broad discretion to consider the characteristics and the competencies and the personalities of individuals that he is looking to promote to be his secondhand person, his right hand. I'd like to ask you something about part of your brief that I found troubling. Yes. So you have a section that says appellants misstate the evidence, and several of the things in there I wasn't sure were misstatements, but one of them really bothered me, which was on page 35. You criticize appellants for asserting that Sionez said he had no intention of promoting appellants. You then give a quote where you say it shows that he never said that, but as far as I can tell on ER-323, he said exactly that direct quote, and I'd like you to explain why you have that page of your brief. Well, this issue came up during the oral argument in front of the district court where that quote was, that representation was made, and the trial court actually took a recess to look at it. And the reason that it's not accurate is that the chief of police in this deposition never said that I will never promote the lieutenants. I mean, he said the words, I have no intention of promoting them. At that time. But the question was phrased in a way that it was represented that the chief was saying from this time until the end of time, I'm never going to promote these lieutenants. So, I mean, you say appellants assert, and then you give a quote, and that quote is an accurate quote, and you're criticizing them for misstating the record. Well, the background for that is what happened at the trial court during the oral argument is that it was represented during the district court oral argument that the chief of police actually represented that there was no way ever that he was going to promote the lieutenants, which he did not say. He said that at the time of these promotions, he was not going to promote them because of the preexisting well-formed opinion that he had of them long before the FLSA lawsuit was ever filed. The cases that have been cited by the appellant do not involve any circumstances where the legitimate business reason for the adverse actions was formed before the protected activity occurred. This is a text. What's the purpose of the yearly evaluations? To provide input into an employee's performance. Isn't it to give them feedback so they can improve? Yes, to establish goals. So if we're looking at those in 2007 and 2008, how are those relevant to a 2013 and 2014 time period? Well, if we're looking at the period where Chief Sainez supervised these individuals, which for Forsyth and for Shea was 2007 until approximately 2010, his close supervision and his ability to see them, their performance over that time period formed his opinion of them and formed his opinion as to their ability to become captains. But it wasn't only the chief's performance evaluations. The subsequent performance evaluations from Captain Sells and also as to Lieutenant Shea from Captains Hendricks and Captain Morrill also demonstrated some troubling issues that they continue to have, even during the time of the recruitment. And also as for Lieutenant Holiday, he was reprimanded in 2012 for, among other things, saying negative things to subordinates about the department, trying to entice a subordinate to sue the city. These are things which happen closer to the time frame of the recruitment itself in 2013 and 2014. But it is legitimate and it is certainly not unlawful for the chief of police to use the opinions that he formed of these appellants during the time that he closely supervised them in 2007 through 2010, 2011. And based upon that preconceived, well-formed opinion, well before the FLSA lawsuit was filed, to make a determination as to whether he felt that based upon the issues that are substantially and significantly documented, that they were appropriate candidates for the captain position and his determination that they were not. Now you might disagree with his reasoning. You might disagree with how harsh he is. You might disagree with his personnel decisions. But unless there's some link that his decision was based upon the FLSA lawsuit, and right now all there is is temporal proximity, which happens. Temporal can be a lot. I'm sorry. It seems to me what you're starting to argue for is as long as you can find enough negative comments early on, the chief is free to do whatever he wants for whatever reason he wants. And I don't think that's the law. So if you're saying in this case the enormous pile of negative comments versus the positive comments is enough so as a matter of law the temporal connection should be disregarded, kind of a tough sell. I mean it doesn't sound like a summary judgment. The appellant is compelled to bring forth, to overcome. I think we can agree that the department has at least set forth a legitimate non-retaliatory reason, obviously. And for the appellant to now raise a tribal issue, they have to show there's some significant and substantial evidence of pretext. And that's what's happened in this case. So why isn't the departure of opening up the position to external candidates enough? Because the motivation to open the recruitment up to external candidates in this case in 2013 actually supports the legitimate business reason. The reason the chief did that is because of the pre-FLSA lawsuit concerns which are well documented. But only if we believe them. I mean it gets back to the same point, right? Maybe it's because only the people who were applying were the ones who had sued him. But how can the chief have preconceived all the negative statements that he made in 2010, 2009, 2008, 2007, well before the FLSA lawsuit was filed, and then say, well, all of those statements that he made before the FLSA lawsuit was filed, those are now somehow motivated by the FLSA lawsuit. No, they're not motivated by that. It's just everyone gets some negative. I mean maybe they have a policy of saying something negative in every review so that there's something to improve upon. Who knows? I mean the person who was promoted had the lying problem, right? There were problems in everyone's past evaluations. Well, with all due respect, the issue, the contention that the person who was promoted had a lying problem is not supported by admissible evidence. What we have are declarations without foundation based on hearsay and without any factual support for those statements. So there's no admissible evidence to support that claim. But if there were such facts that, you know. Were some of those statements by people who worked for the city? They were. They were people who were of officer status. So why aren't they party admissions? Why aren't those admissible as statements by a party? Because they're non-managers. They're rank-and-file officers who had retired from the city. They're individuals who don't have any foundation or factual information about any internal affairs investigations that were done. They weren't involved in any internal affairs investigations, nor were they involved in any imposition of discipline. So they're simply, and the record is replete with declarations that are based upon nothing more than conjecture and speculation from the appellant's side. To answer your question a little more clearly, the 2013 promotion, the fact that these three plaintiffs were the only internal candidates that were applying for that promotion, and the chief based on that decided, I don't feel comfortable promoting these three because of my legitimate concerns that I've documented well before and then opened up the process, that does not indicate that he opened up the process because of the FLSA lawsuit. There's no indication of that whatsoever. It does support the argument that he opened up the process because of the legitimate, pre-formed opinions that he had, which he has documented significantly. This is not a case where the chief is making up these reasons after the fact and throwing out vague terms like not a team player, doesn't show loyalty. These are concerns that the chief had documented and indicated long before the FLSA lawsuit was filed, and not just once or twice, but these evaluations are replete with these negative comments. And I'm sorry, to answer your question, Your Honor, if there were evidence that all lieutenants, and by the way, these were the only three lieutenants until another was promoted, that if other lieutenants had such negative comments or sergeants had negative comments like this or officers had negative comments like this or the two captains had negative comments like this from the chief of police, then appellants would have submitted that in evidence. They would have made that argument that these three were treated differently, even though everybody received the same kind of negative comments. But there's no such evidence in the record, nor is that supportable by the facts. Did they try to get other people's? I mean, maybe they couldn't get in discovery other people's work evaluations because that's secret. In federal court, no. There is a privacy privilege, but there's no ultimate prohibition like there is in state court where you have to go get a pitch. So did they try to get the evaluations of the person who was promoted, the one who was accused of lying? Why isn't that in the record, what those evaluations look like? The argument wasn't made by appellant as to, to be honest, I don't recall if that specific discovery request was made during the litigation. I just don't recall if that specific request, but I do know that through the summary judgments and through the appellate briefs, there's certainly no argument along those lines in the record. I'm not sure what you mean by that because they have a lot of people saying he had problems in his past. So what do you mean by there's no argument about that? I took Your Honor's question to be, how do we know that the chief of police did not make similar negative comments as he made as to these three lieutenants and other people's evaluations? And that might just be his practice. I was just saying that there's no evidence that there are other such comments in other individuals' performance evaluations other than these three lieutenants. Thank you, counsel. Thank you. I do just want to correct the record on the question you asked about the negative comments about Morrell, the one who was promoted in 2014. The statements that were made about him were not statements made by people who are now retired or I'm not sure what counsel said. They were statements made by the chief. The chief was involved in disciplining that gentleman for failing to supervise subordinates. The chief told other people that he felt that that gentleman had been dishonest in the internal affairs investigation. The chief told other people he felt that person could not be trusted, was a liar, and a weak leader. Those are things the chief said about the person he promoted, who also had less tenure than all three of these lieutenants that I represent here today. So he promoted someone who he thought was dishonest and a weak leader, who had less tenure over the three people who had just sued him and successfully, I might add, recouped their overtime pay under the FLSA. So to say there's no triable issue on retaliation, I think everything we've heard today only confirms that there is. Thank you. Thank you. Thank you both sides for your arguments.
judges: Clifton, Friedland, Rice